IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN P. HIPKINS, )
)
     Plaintiff, )
)
 -vs- ) Civil Action No. 15-695
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
     Defendant. )

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Susan P. Hipkins ("Hipkins") appeals an ALJ's denial of her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Hipkins alleges a disability beginning on August 10, 2011 and premised upon a number of impairments, particularly hypertension. (R. 145, 151) Following a hearing and consultation with a vocational expert, the ALJ denied her claim, concluding that she retained the residual functional capacity ("RFC") to perform light work with certain restrictions (R. 12-23) Hipkins appealed. Pending are Cross Motions for Summary Judgment. *See ECF Docket Nos.* [10] and [16]. After careful consideration and for the reasons set forth below, this case is affirmed.

### **Legal Analysis**

   1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, apps. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. the claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

2. <u>The ALJ's Evaluation of Hypertension at the Third Step</u>

Hipkins contends that the ALJ failed to properly evaluate her accelerated hypertension at the third step of the sequential analysis. As set forth above, in step three of the analysis, the ALJ must determine if the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. *Jesurum v.*

*Secretary of Health and Human Services*, 48 F.3d 114, 117 (3d Cir. 1995). The Third

Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

*Burnett v. Commissioner of Social Security*, 220 F.3d 112, 120, n. 2 (3d Cir. 2000), *quoting, Sims v. Apfel*, 530 U.S. 103 (2000). An applicant is per se disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. *Burnett*, 220 F.3d at 119. The question before me then is whether, as Hipkins contends, the ALJ failed to consider how her hypertension related to her abnormal brain (syncope), heart and kidney functioning.[1] She insists that the ALJ's analysis of this issue consists solely of the following: "[t]he claimant's blood pressure does not rise to the level of any of the listed impairments in section 4.00 for cardiac impairments." (R. 19)[2]

A review of the record convinces me that the ALJ did, in fact, consider the effect that hypertension had on Hipkins' brain. Indeed, the ALJ expressly considered Listings

---

[1] Listing 4.00 provides a framework for the evaluation of hypertension. Specifically, it explains that "[b]ecause hypertension (high blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings." 20 C.F.R. pt. 404, sbpt. P, app. 1, § 4.00H.1.

[2] The Third Circuit Court has held that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to, a listed impairment was insufficient. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). But it is important to note that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. In this case, the ALJ's decision, *read as a whole*, illustrates that Jones did not meet the requirements for any listing, including Listing 3.02(A)." *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004) (emphasis added) (citations omitted). Here, although the ALJ may have abbreviated his findings in his step three analysis, a further articulation of his position and analysis of Hipkins' impairments can be found at subsequent parts of his analysis. Consequently, in reading his decision as a whole, his reasoning for finding that Hipkins did not meet the requirements for any Listing is clear and supported by substantial evidence of record.

11.00, 11.02, 11.03, 11.04 and 11.18 as well as her migraines and syncope. (R. 18, 20) The ALJ noted that Hipkins had not reported any syncopal episodes since late 2012 and that "her physical exam remained stable with normal gait, sensation, coordination, and strength." (R. 21, *citing* Exhibits 13F, 16F). ALJ also considered Hipkins' complaints of vertigo and dizziness and found that they did not rise to the level of Listing 2.07. (R. 18-19) Similarly, the ALJ reviewed the effect that Hipkins' hypertension had on her heart. As stated above, the ALJ specifically referenced Listing 4.00 relating to cardiac impairments and found that Hipkins' impairments did not rise to the levels set forth in the Listing. (R. 19) The ALJ discussed her treatment with Dr. Burley, a cardiologist, as well as the adjustments to her hypertension medication. (R. 20) He also observed that Hipkins had not followed up with cardiologists since 2012 and, in the context of discussing emergency room visits, stated that she had not required specific treatment for her hypertension since late 2012. (R. 20) Finally, although Hipkins contends that her hypertension impacted her kidneys, the record does not support such an argument. There is simply no evidence indicating that Hipkins suffered from a chronic kidney disease which would merit evaluation under Listing 6.00. Indeed, an April 23, 2012 renal ultrasound was noted to be a "normal study." (R. 255) A subsequent exam in August of 2013 revealed that Hipkins had a normal glomerular filtration rate ("GFR"). (R. 467) Consequently, I reject Hipkins' contention that the ALJ failed to properly evaluate her hypertension at Step Three.

    3. <u>The ALJ's Credibility Analysis</u>

Hipkins next contends that the ALJ erred in his assessment of her credibility. More specifically, she urges that in analyzing credibility, the ALJ failed to fully

5

appreciate the side effects of the numerous medications she was on. It is well established that the ALJ has the responsibility for determining a claimant's credibility. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974) *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determinations are entitled to great deference, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974).

After careful review, I find that the ALJ appropriately considered Hipkins' impairments and symptoms and that he formulated the RFC based upon those complaints which were substantiated by the evidence. First, the ALJ recognized that Hipkins testified that her impairments caused high blood pressure, fatigue, dizziness, episodes of passing out and joint pain. (R. 19) He further acknowledged Hipkins' contention that her blood pressure was difficult to control, that she was on multiple medications, and that the medications have many side effects. (R. 19-20) The ALJ need not have recounted each medication and its precise side effects. The fact that he recognized side effects such as dizziness, lightheadedness, nausea, is sufficiently specific.

Further, the ALJ's conclusion is supported by substantial evidence of record. For instance, as the ALJ noted, Hipkins' activities of daily living (continuous exercise and

reports of good physical activity to her physicians) are at odds with the severity of her complaints. (R. 21) Further, despite Hipkins' complaints, she did not report her symptoms to her physicians. (R. 21) Moreover, she has not lost consciousness since late 2012 when her blood pressure medications were adjusted and she has not returned to her cardiologist since that time. (R. 21) Finally, expert testimony supports the ALJ's finding that Hipkins' symptoms and side effects from medication were not disabling. Dr. Chatha, Hipkins' treating physician, completed a Medical Source Statement in July of 2012, opining that she could carry 25 pounds frequently and lift up to 50 pounds frequently. (R. 259) He imposed no limitations with respect to her ability to sit, and found that she could stand / walk between two and six hours. (R. 259) He imposed only limited environmental and postural restrictions. (R. 259-60) Similarly, Dr. Sarpolis, a state agency medical consultant, stated that Hipkins could perform light work with occasional postural activities. (R. 279-85)

Finally, the ALJ did not completely reject Hipkins' complaints. The RFC does make allowances for some of the symptoms of which she complained. She is to avoid prolonged sitting and standing. She is precluded from climbing and there are limitations with respect to her ability to balance, stoop, kneel, crouch and crawl. (R. 19) Additionally, the ALJ imposed various environmental restrictions. (R. 19)

　　*4.* <u>The Appointment of a Medical Expert</u>

Finally, Hipkins assigns error in the ALJ's failure to obtain a medical expert opinion regarding her hypertension at step three and step five of the analysis. The regulations permit an ALJ to call a medical expert. *See* 20 C.F.R. § 404.1527(e)(2)(iii) and §416.927(e)(iii) (stating that an ALJ "may also ask from and consider opinions from

medical experts on the nature and severity " of a claimant's impairments and whether those impairments equal the requirements of any listed impairment). But the calling of a medical expert is not mandated. It is within the ALJ's discretion. Here, as stated above, the ALJ relied upon substantial evidence in concluding that Hipkins' hypertension and related impairments did not rise to the level, or the equivalency thereof, of a listed impairment. Further, the ALJ did consider and rely upon two medical opinions in formulating his opinions. (R. 68-71, 82, 279-8) These medical opinions supported the ALJ's decision both with respect to the findings at step three and with respect to the formulation of the RFC.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN P. HIPKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 15-695 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 5th day of December, 2016, it is hereby ORDERED that the decision of the ALJ is affirmed and that Plaintiff's Motion for Summary Judgment (Docket No. 10) is denied and Defendant's Motion for Summary Judgment (Docket No. 16) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge